1  Carolyn H. Cottrell (SBN 166977)
   Ori Edelstein (SBN 268145)
   Michelle S. Lim (SBN 315691)
2  **SCHNEIDER WALLACE**
   **COTTRELL KONECKY LLP**
3  2000 Powell Street, Suite 1400
   Emeryville, California 94608
4  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
5  ccottrell@schneiderwallace.com
   oedelstein@schneiderwallace.com
6  mlim@schneiderwallace.com

7  *Attorneys for Plaintiffs, and the Putative*
   *Classes and Collective*
8

9                **UNITED STATES DISTRICT COURT**

10              **EASTERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  JOSHUA WRIGHT, LORETTA STANLEY, HALEY QUAM, and AIESHA LEWIS, on behalf of themselves and all others similarly situated, | Case No.: 2:19-cv-01767-JAM-CKD |
| 13 | Hon. John A. Mendez |
| 14              Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15       vs. | |
| 16  FRONTIER MANAGEMENT LLC, FRONTIER SENIOR LIVING, LLC, and GH SENIOR LIVING, LLC dba GREENHAVEN ESTATES ASSISTED LIVING, | |
| 17 | |
| 18 | Date:          September 13, 2022 |
| 19              Defendants. | Time:          1:30 p.m. |
| | Ctrm.:        6, 14th Floor |
| 20 | |
| 21 | Filed: September 6, 2019 |
| | Trial Date: None |

22

23

24

25

26

27

28

---

**TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on September 13, 2022, at 1:30 p.m., before Judge John A. Mendez of the United States District Court, Eastern District of California, Plaintiffs Joshua Wright, Loretta Stanley, Haley Quam, and Aiesha Lewis ("Plaintiffs") move the Court for preliminary approval of the Class Action Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell) as to the California Class, the Oregon Class, the Washington Class, and the Illinois Class, and approval of the Settlement as to the Collective. The Settlement globally resolves all of the claims in these actions on a class and collective basis. In particular, Plaintiffs move for orders:

(1)   Granting preliminary approval of the Settlement Agreement as to the California, Oregon, Washington, and Illinois Classes ("State Classes");

(2)   Granting approval of the Settlement Agreement as to the Collective;

(3)   Conditionally certifying the State Classes for settlement purposes;

(4)   Approving the proposed schedule and procedure for completing the final approval process for the Settlement as to the State Classes, including setting the Final Approval Hearing;

(5)   Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as Counsel for the State Classes and for the Collective;

(6)   Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(7)   Preliminarily appointing and approving Plaintiffs Wright, Stanley, Quam, and Lewis as Class Representatives for the California, Oregon, Washington, and Illinois State Classes, respectively;

(8)   Appointing and approving the Plaintiffs Wright, Stanley, Quam, and Lewis as the Collective Representatives for the Collective for purposes of the Settlement;

(9)   Preliminarily appointing and approving SSI Settlement Services Inc. ("SSI") as the Settlement Administrator for the State Classes and the Collective;

(10)   Approving the Notice of Class Action Settlement ("Class Notice") and Notice of Collective Action Settlement ("Collective Notice") as it pertains to the State Classes and to the Collective, respectively (attached as **Exhibits C** and **D** to the Settlement Agreement); and

(11)    Authorizing the Settlement Administrator to mail and email the Class Notice to the State Classes and the Collective Notice to the Collective;

(12)    Approving the proposed schedule for completing the settlement process as to the State Classes and Collective:

| | |
|---|---|
| Deadline for Defendants to pay the Gross Settlement Amount in the QSF | Within 30 calendar days after Final Approval Order |
| Deadline for Defendants to provide SSI with the Class List | Within 30 calendar days after the Court's preliminary approval of the Settlement |
| Deadline for SSI to mail the Notice of Settlement to Class Members | Within 10 business days after SSI receives the Class List |
| Deadline for State Class Members to postmark requests to opt-out or file objections to the Settlement ("Notice Deadline") | 60 days after Notice of Settlement are initially mailed |
| Deadline for SSI to provide all counsel with a report showing (i) the names of Settlement Class Members; (ii) the Individual Settlement Payments owed to each Settlement Class Members; (iii) the final number of Settlement Class Members who have submitted objections or valid letters requesting exclusion from the Settlement; (iv) the estimated average and median recoveries per State Class Member; (v) the largest and smallest estimated recoveries to State Class Members; and (vi) the number of undeliverable Notices of Settlement. | Within 10 business days after the Notice Deadline |
| Deadline for filing of Final Approval Motion | As soon as practicable |
| Final Approval Hearing | No earlier than 30 days after the Notice Deadline |
| Effective Date | The latest of the following dates: (i) if there are one or more objections to the settlement that are not subsequently withdrawn, then the date after the expiration of time for filing a notice of appeal of the Court's Final Approval Order, assuming no appeal or request for review has been filed; (ii) if there is a timely objection and appeal by one or more objectors, then the date after such appeal or appeals are terminated (including any requests for rehearing) resulting in the final judicial approval of the Settlement; or (iii) if there are no timely objections to the settlement, or if one or more objections were filed but subsequently withdrawn before the date of Final Approval, then the first business day after the Court's order granting Final Approval of the Settlement is entered |

| Deadline for SSI to calculate the employer share of taxes and provide Defendants with the total amount of Defendants' Payroll Taxes | Within 5 business days after final Settlement Award calculations are approved |
|---|---|
| Deadline for SSI to make payments under the Settlement to Participating Individuals, the LWDA, Class Representatives, Plaintiffs' counsel, and itself | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Check-cashing deadline | 180 days after issuance |
| Deadline for SSI to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | Within 10 business days after the check cashing period |
| Deadline for SSI to tender uncashed check funds to cy pres recipient Legal Aid at Work or redistribute such uncashed funds to Participating Individuals who cashed their Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for Plaintiffs to file a Post-Distribution Accounting | Within 21 days after the distribution of any uncashed funds |

(13)   Setting a final approval and fairness hearing.

Plaintiffs bring this Motion pursuant to Fed. R. Civ. P. 23(e) and long-established precedent requiring Court approval for Fair Labor Standards Act settlements.[1] The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, and all other records, pleadings, and papers on file in the consolidated and related actions and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement with their moving papers.

Date: July 21, 2022                                  Respectfully Submitted,


                                                     */s/ Carolyn H. Cottrell*
                                                     Carolyn H. Cottrell
                                                     Ori Edelstein
                                                     Michelle S. Lim
                                                     **SCHNEIDER WALLACE**
                                                     **COTTRELL KONECKY LLP**
                                                     2000 Powell Street, Suite 1400

---

[1] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

*Attorneys for Plaintiffs, and the Putative Classes
and Collective*

1

## <u>TABLE OF CONTENTS</u>

2

3

4
I.     INTRODUCTION ...............................................................................................1

5
II.    BACKGROUND ..............................................................................................1

6
     A. Procedural Background. ...........................................................................1

7
          1.  This Action and the Subsequent Appeal. ...................................1

8

9
          2.  The Companion State Action and the Subsequent Appeal...........2

10
          3.  The Operative Complaint Filed Pursuant to the Parties' Settlement............................3

11
          4.  Discovery............................................................................3

12
          5.  The Parties' Settlement Efforts. ...................................................4

13
     B. Factual Background.................................................................................5

14
III.   TERMS OF THE SETTLEMENT ...................................................................6

15
     A. Basic Terms of the Settlement................................................................6

16

17
     B. Class and Collective Definitions. ...........................................................7

18
     C. Allocation and Awards. ..........................................................................8

19
     D. Scope of Release......................................................................................9

20
     E. Settlement Administration. ....................................................................10

21
IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE STATE LAW CLASSES AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE ....................................................10

22

23

24
     A. The Court Should Grant Preliminary Approval of the Settlement as to the Classes.........10

25
     B. The State Classes Meet the Requirements for Class Certification. ..................................11

26
          1.  The State Classes Are Numerous and Ascertainable. .................................12

27

28

2.   Plaintiffs' Claims Raise Common Issues of Fact or Law............................................12

3.   Plaintiffs' Claims are Typical of the Claims of the Respective State Classes. ...........13

4.   Plaintiffs and Class Counsel Will Adequately Represent the State Classes. ..............13

5.   The Rule 23(b)(3) Requirements for Class Certification are also Met.......................13

C.   Plaintiffs and the Collective Members are Similarly Situated. .........................................15

D.   The Settlement Should Be Preliminarily Approved as to the State Classes
and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate...........16

1.   The Terms of the Settlement are Fair, Reasonable, and Adequate, and Were
Reached Only After Months of Negotiations at Arm's Length. ...............................17

2.   The Parties Agreed to a Fair and Equitable Distribution of the Settlement
Proceeds Tailored to the Respective Claims of the Classes and Collective...............19

3.   The Extensive Discovery in this Action Enabled the Parties to Make
Informed Decisions Regarding Settlement..................................................................20

4.   Litigating the Action Not Only Would Delay Recovery, but Would be
Expensive, Time Consuming, and Involve Substantial Risk. ....................................21

5.   The Settlement is the Product of Informed, Non-collusive, and Arm's Length
Negotiations Between Experienced Counsel................................................................24

6.   The Class Representative Enhancement Payments are Reasonable and
the Class Representatives Have Adequately Represented the Classes........................25

7.   The Requested Attorneys' Fees and Costs are Reasonable and Plaintiffs'
Counsel Have Adequately Represented the Classes. ..................................................26

E.   The Proposed Notices of Settlement and Claims Process Are Reasonable.......................28

V.      CONCLUSION .......................................................................................................................30

1

### TABLE OF AUTHORITIES

2

### CASES

3

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*,

4   2018 U.S. Dist. LEXIS 20460, 2018 WL 746393 (E.D. Cal. 2018).....................................17

5

*Amaral v. Cintas*,

6   163 Cal.App.4th 1157 (2008) .............................................................................................24

7

*Amchem Prod., Inc. v. Windsor*,

   521 U.S. 591 (1997).............................................................................................................14

8

9

*Andrews v. Prestige Care, Inc.*,

   Case No. 2:18-cv-00378-JAM-KJN (Dkt. No. 24, Mar. 24, 2020; Dkt. No. 32, July 14, 2020)

10   (Mendez, J.).........................................................................................................................17

11

*Carter v. Anderson Merchandisers, LP*,

12   No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ...............24

13

*Caudle v. Sprint/United Mgmt. Co.*,

14   No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018)..............................11

15

*Chastain v. Cam*,

16   No. 3:13-cv-01802-SI, 2016 U.S. Dist. LEXIS 52092 (D. Or. Apr. 19, 2016) ...................12

17

*Chu v. Wells Fargo Investments, LLC*,

   Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645 (N. D. Cal. Feb.16, 2011) ...................26

18

*Churchill Village, LLC. v. Gen. Elec.*,

19   361 F.3d 566 (9th Cir. 2004)..........................................................................................16, 28

20

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,

21   No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)..............................15

22

*Eisen v. Carlisle & Jacquelin*,

23   417 U.S. 156 (1974).............................................................................................................28

24

*Emily Gracey v. Frontier Management, LLC, et al.*,

25   Stanislaus Superior Court, Case No. CV-22-000990.............................................................3

26

*Forrester v. Roth's I. G. A. Foodliner, Inc.*,

   475 F.Supp. 630 (D Or 1979) .............................................................................................21

27

28

iii

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

*Franco v. Ruiz Food Prods., Inc.*,
2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 (E.D. Cal. 2012).................................17

*Fry v. Hayt, Hayt & Landau*,
198 F.R.D. 461 (E.D. Pa. 2000)......................................................................................12, 13

*Garcia v. Gordon Trucking*,
2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 (E.D. Cal. 2012).................................17

*Gonzales v. CoreCivic of Tennessee, LLC*,
2018 WL 4388425 (E.D. Cal. Sept. 13, 2018)....................................................................17

*Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-CV-01063-KJM-CKD,
2020 U.S. Dist. LEXIS 168923 (E.D. Cal. Sep. 15, 2020).................................................25

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)....................................................................................passim

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
280 F.R.D. 388 (N.D. Ill. 2011)......................................................................................22

*Holmes v. Continental Can Co.*,
706 F.2d 1144 (11th Cir. 1983).....................................................................................20

*Ikonen v. Hartz Mountain Corp.*,
122 F.R.D. 258 (S.D. Cal. 1988.....................................................................................12

*In re Activision Sec. Litig.*,
723 F.Supp. 1373 (N.D. Cal. 1989)..............................................................................26

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011).......................................................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir.2000).........................................................................................17

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)......................................................17

*Ironwood Commc'ns, Inc.*,
No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006).............................11

*Jones, et al. v. CertifiedSafety, et al.*,
3:2017-cv-02229 (N.D. Cal. June 1, 2020)................................................................19, 26

*Kilbourne v. Coca-Cola Co.*,
No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)..........................................21

*Lewis v. Starbucks Corp.*,
No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ..............................20

*Loeza v. JP Morgan Chase Bank*,
No. 13-cv-0095-L (BGS), 2015 U.S. Dist. LEXIS 196647 (S.D. Cal. Aug. 18, 2015).......................19

*Lusk v. Five Guys Enters. LLC*,
No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812 (E.D. Cal. Jan. 22, 2022)................16

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982)...........................................................................................................15

*Ma v. Covidien Holding, Inc.*,
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ......................................................................................17

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) .......................................................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)...........................................................................................................................28

*Noyes v. Kelly Servs., Inc.*,
2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008)...........................................27

*O'Connor v. Uber Technologies Inc.*,
201 F.Supp.3d 1110 (N.D. Cal. 2016) ...............................................................................................17

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)......................................................................................................16, 17, 19

*Otey v. CrowdFlower, Inc.*,
No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) .........................................15, 16

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)...........................................................................................................................28

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)...........................................................................................................26

*Ramirez v. Benito Valley Farms, LLC*,
No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, 2017 WL 3670794
(N.D. Cal. Aug. 25, 2017)................................................................................................17

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*,
No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011)..................................26

*Reyes v. CVS Pharmacy, Inc.*,
No. 1:14-cv-00964-MJS, 2016 U.S. Dist. LEXIS 17180 (E.D. Cal. Feb. 10, 2016).........20

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) .....................................................................................12

*Schiller v. David's Bridal, Inc.*,
2012 U.S. Dist. LEXIS 80776 (E.D. Cal. 2012) ..............................................................17

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994)............................................................................................28

*Smith v. Family Video Movie Club, Inc.*,
311 F.R.D. 469 (N.D. Ill. 2015) ......................................................................................12

*Smith v. Lux Retail N. Am., Inc.*,
No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562 (N.D. Cal. June 13, 2013)...........23

*Smith v. Rae Venter Law Group*,
29 Cal.4th 345 (2002) .....................................................................................................24

*Soto, et al. v. O.C. Commc'ns, Inc., et al.*,
Case No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019)............................................19, 26

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)......................................................................................25, 26

*Stovall-Gusman v. W.W. Granger, Inc.*,
2015 WL 3776765 (N.D. Cal. June 17, 2015) .................................................................17

*Van Vranken v. Atl. Richfield Co.*,
901 F.Supp. 294 (N.D. Cal. 1995.....................................................................................25

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) .....................................................................................26

*Viceral v. Mistras Grp., Inc.*,
Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016)........................17

*Villafan v. Broadspectrum Downstream Servs.*,
No. 18-cv-06741-LB, 2020 U.S. Dist. LEXIS 218152 (N.D. Cal. Nov. 20, 2020)..............19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)..........................................................................26

*Wage & Hour Emp't Practices Litig.*,
289 F.R.D. 526 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019)..21

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013)......................................................................12, 14

*Wren v. RGIS Inventory Specialists*,
No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011).....................16, 24, 26

*York v. Starbucks Corp.*,
No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011).................21

**STATUTES**

29 U.S.C. §§ 201, *et seq*.................................................................................1

29 U.S.C. 216(b) ......................................................................................2, 15

29 U.S.C. 260 .............................................................................................23

Cal. Lab. Code § 203 .....................................................................................24

Fed. R. Civ. P. 12(b)(6).................................................................................2

Fed. R. Civ. P. 23 ...........................................................................8, 11, 12, 19

Fed. R. Civ. P. 23 (a) ....................................................................................11

Fed. R. Civ. P. 23(a)(2) .................................................................................12

Fed. R. Civ. P. 23(a)(3) .................................................................................13

Fed. R. Civ. P. 23(a)(4) .................................................................................13

Fed. R. Civ. P. 23(b)(3)..................................................................11, 12, 13, 14

Fed. R. Civ. P. 23(c)(2)(B)...................................................................................................28

Fed. R. Civ. P. 23(e)...........................................................................................................10

Fed. R. Civ. P. 23(e)(2)..................................................................................................11, 16

**<u>TREATISES</u>**

Conte, Newberg on Class Actions (3rd Ed. 1992)........................................................28, 29

Manual for Complex Litigation (4th ed. 2004)......................................................11, 28, 29

Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992)........................................27

## I.    INTRODUCTION

After nearly three years of intensive litigation, including formal discovery, extensive motion practice, amendments to the complaint, conditional certification, multiple mediations and exhaustive pre-mediation discovery and outreach, appellate filings, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of this class and collective action (the "Action"). Plaintiffs now seek preliminary approval of the Settlement as to the California, Oregon, Washington, and Illinois Classes and approval of the Settlement as to the Collective.[2]

The Action is based on Defendants'[3] alleged violations of federal and state wage and hour laws, resulting in the underpayment of wages and the failure to provide compliant meal and rest periods to thousands of Defendants' current and former non-exempt employees providing care at assisted senior living facilities throughout the United States, including in California, Oregon, Washington, and Illinois.[4]

The Parties have resolved the claims of approximately 20,662 similarly situated non-exempt employees, for a total non-reversionary settlement of $9,500,000. With this proposed Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement provides an excellent benefit to the Classes and Collective and an efficient outcome in the face of expanding litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approval.

## II.    BACKGROUND

### A.  Procedural Background.

#### 1.  This Action and the Subsequent Appeal.

On September 6, 2019, Plaintiff Wright filed a Class and Collective Action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and under California law on behalf of a putative California Class. ECF 1.

---

[2] The Class Action Settlement Agreement and Release ("Settlement") is attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement ("Cottrell Decl.").
[3] "Defendants" refers to Defendants Frontier Management LLC; Frontier Senior Living, LLC; and GH Senior Living, LLC d/b/a Greenhaven Estates Living.
[4] For purposes of brevity, Class and Collective Members are collectively referred to as "Caregivers."

1

On March 13, 2020, the Parties stipulated to conditional certification of the Collective and to facilitate nationwide notice pursuant to 29 U.S.C. 216(b), on behalf of a nationwide collective of non-exempt employees of Defendants, which was granted on March 17, 2020. ECF 13, 15. A total of 953 individuals filed FLSA opt-in consent forms. *See,* ECF 67.

On February 8, 2021, the Court granted Plaintiff leave to amend the complaint to add Loretta Stanley, Haley Quam, and Aiesha Lewis as named plaintiffs, include additional state law class claims, and clarify preexisting allegations. *See* ECF 45, 56*.* The FAC, filed February 9, 2021, alleges that Defendants violated the FLSA and California, Oregon, Washington, and Illinois wage and hour laws by failing to pay non-exempt employees their earned wages, failing to provide legally compliant meal and rest periods, and failing to reimburse for work-related expenditures. ECF 57*.*

Defendants filed a motion to dismiss the Action pursuant to Fed. R. Civ. P. 12(b)(6) on March 15, 2021, arguing that the FAC (1) failed to plead sufficient facts to state plausible claims for meal and rest period violations, (2) failed to plead sufficient facts to support Plaintiffs' claims for unpaid wages, (3) fails to plead a claim for reimbursement of business expenses, and (4) fails to plead derivative claims because the primary claims fail. ECF 68. The Court granted Defendants' motion with prejudice and without leave to amend. *See* ECF 72-73. Plaintiffs appealed the Court's order on June 17, 2021 (Case No. 21-16052).[5] *See* ECF 74.

### 2. The Companion State Action and the Subsequent Appeal.

After providing the California Labor and Workforce Development Agency ("LWDA) with the requisite notice, Plaintiff Wright filed a separate complaint pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA") in the California Superior Court of Alameda County ("State Action") against Defendants (Case No. RG19035167), on September 16, 2019. *See* ECF 79; Declaration of Carolyn H. Cottrell in Support of Plaintiffs' Mot. for Preliminary Approval of Class and Collective Action Settlement ("Cottrell Decl."), ¶ 8.

On April 8, 2021, Defendants filed a motion for summary judgment or, in the alternative, summary adjudication arguing, *inter alia*, that Plaintiff failed to exhaust his administrative remedies

---

[5] The Ninth Circuit dismissed the appeal without prejudice for settlement purposes pursuant to the Parties' stipulation on June 22, 2022, following the execution of the Settlement. *See* ECF 78; *see also* Case No. 21-16052, DktEntry 22; Settlement., ¶ 17.

under the PAGA. *Id.,* ¶ 9. Following full briefing, the superior court denied Defendants' motion without prejudice, and ordered Plaintiff Wright to file a first amended complaint to more clearly plead separate causes of action against Defendants. *Id.* Plaintiff Wright filed the first amended complaint in the State Action on July 14, 2021. *Id.*

Defendants also filed a motion to strike Plaintiff's PAGA claims under the theory that Plaintiff's PAGA claims would be unmanageable at trial on April 8, 2021. *See Id.*, ¶ 10. On July 2, 2021, the superior court denied Defendants' motion to strike without prejudice. *Id.*

On September 10, 2021, Defendants filed a petition for writ of mandate for an order directing the superior court to vacate its July 2, 2021 order and to rule on Defendants' motion to strike on the merits. *Id.*, ¶ 11. On September 15, 2021, the California Court of Appeal notified the parties that it was considering issuing a peremptory writ in the first instance. *Id.* The petition for writ of mandate is currently pending before the Court of Appeal of the State of California, First Appellate District, Division One (Case No. A163424). *Id.*

### 3. The Operative Complaint Filed Pursuant to the Parties' Settlement.

For purposes of the Settlement, the Parties agreed to stay the State Action pending approval of the Settlement, and to stipulate to amend the FAC in this Action to include the PAGA claims asserted in the State Action and to cite additional theories of liability under the PAGA.[6] Settlement, ¶¶ 16-19. On June 30, 2022, the Parties filed the stipulation to amend the FAC, which was subsequently granted, and the Second Amended Class and Collective Action Complaint ("Complaint") was deemed filed on July 5, 2022. ECF 79, 79-1, 82.

### 4. Discovery.

On December 2, 2020, Plaintiffs propounded written discovery requests, including 72 requests for production of documents and 12 special interrogatories to each Defendant. Cottrell Decl., ¶¶ 14, 16.

---

[6] Pursuant to the Settlement, the Parties agreed the Settlement is conditioned on the dismissal with prejudice of Defendants and the Releasees from the lawsuit entitled *Emily Gracey v. Frontier Management, LLC, et al.*, Stanislaus Superior Court, Case No. CV-22-000990 (the "Gracey Action"). Settlement, ¶¶ 19, 25, 34.a. The Second Amended Class and Collective Action Complaint filed in this action incorporates the PAGA claims Gracey asserted in her complaint and pursuant to her December 29, 2021 letter to the LWDA. Following extensive meet and confer between Ms. Gracey's counsel, Defendants' counsel, and Plaintiffs, Ms. Gracey agreed to dismiss with prejudice Defendants and the Releasees from the *Gracey* Action and agreed to a general release of claims in exchange for her incorporation into the Settlement. Cottrell Decl., ¶ 15.

1   Plaintiffs propounded an additional 69 requests for production of documents and 19 special

2   interrogatories in the State Action in December 2020. *Id.*, ¶¶ 15-18. Ultimately, through the formal and

3   informal discovery process in advance of mediation, Defendants produced over 3,000 documents in

4   this Action, including their general policies throughout each state, job descriptions, personnel records,

5   written complaints, as well as tens of thousands of pages of Excel data sheets showing samplings of

6   time and payroll records representing 25% of the Classes and the Collective. *Id.*, ¶ 20. Defendants also

7   provided class-wide figures, including the total number of Caregivers and associated workweeks and

8   pay periods, hourly rates, and additional data points, ahead the mediation, to enable Plaintiffs' counsel

9   to evaluate damages on a Class and Collective basis. *Id.*

10       Plaintiffs additionally completed extensive outreach with Caregivers, including nearly 300 in-

11   depth interviews, which covered topics including dates and locations of work, hours of work, pre-shift

12   and post-shift off-the-clock work, meal and rest breaks, and reimbursement of work-related expenses.

13   *Id.,* ¶ 19. Numerous Caregivers that completed interviews also provided additional documents to

14   Plaintiff's counsel. *Id.* Through this process, Plaintiffs garnered substantial factual background

15   regarding the alleged violations, which Plaintiffs' counsel utilized to build their case and to assess

16   Defendants' potential exposure in this action. *Id.*

17       Plaintiffs' counsel completed an exhaustive review of the documents, and used the information

18   and data from Defendants and from the Caregiver to prepare for mediation. *Id*., ¶ 20.

19           **5.   The Parties' Settlement Efforts.**

20       On July 29, 2020, the Parties participated in a full-day private mediation before respected wage

21   and hour mediator, David Rotman. *Id*., ¶ 21. The case did not settle that day. *Id.* On August 26, 2020,

22   the Parties participated in a second, half-day mediation before Mr. Rotman, but again the cases did not

23   settle. *Id.*

24       On October 5, 2021, the Parties further participated in a full-day mediation before respected

25   wage and hour mediator Steven Serratore. *Id.* ¶¶ 22. The case did not settle that day; however, the

26   Parties accepted a mediator's proposal to settle both this Action and the PAGA Action the next day on

27   October 6, 2021. *Id.,* ¶¶ 22-23.

28

The Parties extensively met and conferred over the detailed terms of the settlement over the next couple of months of intensive, arm's-length negotiations, and eventually executed the finalized long-form settlement agreement on June 8, 2022. *Id.*, ¶ 24.

### B. Factual Background.

Defendants maintain a chain of assisted senior living communities throughout the United States, including California, Washington, Oregon, and Illinois. Complaint, ¶ 28. To operate these communities, Frontier employs thousands of Caregivers who are classified as non-exempt employees. *See Id.*, ¶¶ 28, 40. These Caregivers are tasked with a variety of overlapping duties, including attending to residents' daily needs, communicating with residents' families, providing medication to residents, transferring residents, changing residents' bedding, doing laundry, serving food to residents, filling out paperwork, cleaning the facility, and attending mandatory meetings. Cottrell Decl., ¶ 25.

Caregivers are usually scheduled to work eight-hour shifts, five to six days a week, and are regularly required to work in excess of forty hours per week. *Id.*; Complaint, ¶¶ 41-44, 228. Plaintiffs allege that the Caregivers experience significant amounts of unpaid, pre- and post-shift off-the-clock work, including: work performed during meal periods, filling out paperwork, waiting for other employees to relieve them of their posts, or help other employees with a number of tasks, such as transferring residents, and arrive to work ten to fifteen minutes prior to clocking in. *Id.*, ¶¶ 45, 49-52. Caregivers are subject to further off-the-clock work prior to and following their scheduled shifts due to Defendants' unlawful rounding practices to round down time worked by Caregivers to the nearest fifth-minute in favor of Defendants, resulting in further underpayment of wages. *Id.,* ¶ 53.

Plaintiffs further allege that the Caregivers cannot take timely, full, off-duty meal and rest periods, as they are required to carry and respond to communication devices, including radios, pagers, company-issued cellphones, and personal cellphones, with them at all times, so that they could be reached while on break pursuant to Defendants' policies and practices. *Id.*, ¶¶ 45-48. Moreover, Plaintiffs allege that the Caregivers are not reimbursed or compensated for the purchasing and maintenance other business expenses such as clothing, footwear, tools, supplies and equipment, such as personal protective equipment. *Id.*, ¶ 56.

As a result of these alleged violations, Plaintiffs allege that Defendants systematically violate the

Fair Labor Standards Act, as well as California, Oregon, Washington, and Illinois labor laws. *See generally*, Complaint. Plaintiffs allege that throughout the relevant time period, Defendants eschewed their obligations to Plaintiffs and Caregivers by allegedly: (1) not paying Class and Collective Members proper minimum and overtime wages for work performed off-the-clock on a daily basis; (2) failing to provide Class Members with a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods are not taken; (3) failing to reimburse Class Members for necessarily-incurred expenses; and (4) failing to issue Class Members accurate, itemized wage statements. *Id*.

Defendants have at all times denied, and continue to deny, all of these allegations, including any liability for alleged failure to pay overtime compensation or any alleged wage payment, wage and hour or similar violation. Settlement, ¶¶ 1, 6, 12, 13, 18. Defendants further deny that Plaintiffs' allegations are appropriate for class/collective and/or representative treatment for any purpose other than for settlement purposes. *Id.,* ¶ 15.

## III.    TERMS OF THE SETTLEMENT

### A.    Basic Terms of the Settlement.

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $9,500,000 to settle all aspects of this Action and the State Action. Settlement, ¶ 2.r. Defendants will pay $9,500,000 into an interest-bearing Qualified Settlement Fund ("QSF") thirty (30) days following final approval of the Settlement. *Id.,* ¶¶ 2.r, 33, 41. Pursuant to the Settlement, Defendants may not access any portion of the Gross Settlement Amount once it has been deposited into the QSF. *Id.* Once the Court issues an order granting final approval of the Settlement, the Settlement Administrator will distribute all funds from the Qualified Settlement Fund; and if final approval is denied, then the Gross Settlement Amount will be returned to the Defendants. *Id.*, ¶¶ 33, 41, 52.

The Net Settlement Amount, which is the amount available to pay settlement awards to the Class Members, is defined as the Gross Settlement Amount less: the payments to the LWDA and to the aggrieved employees for their share of PAGA penalties ($95,000.00)[7]; any enhancement payments

---

[7] The Settlement Administrator shall pay 75%, or $71,250, of this amount to the LWDA, and 25%, or $23,750, the "Net PAGA Amount," to the Aggrieved Employees. *Id.*

awarded to the Class Representatives (up to $10,000.00 for Plaintiff Wright and up to $5,000 each for Plaintiffs Stanley, Quam, and Lewis, and up to $5,000 to Emily Gracey); the Settlement Administrator's costs (estimated to be $149,400); and any attorneys' fees and costs awarded to Plaintiff's counsel (fees of up to 35% of the Gross Settlement Amount, plus costs not to exceed $110,000). *Id.,* ¶¶ 2.e, 2.m, 2.t, 2.u, 2.dd, 2.ff, 34.c. Plaintiffs, however, will move for attorneys' fees of a maximum of one-third of the Gross Settlement Amount (i.e., $3,166,663.50) during final approval. Cottrell Decl., ¶ 28. The Net Settlement Amount to Participating Individuals, plus the Net PAGA Amount allocated to the aggrieved employees, is currently estimated to be $5,973,086.50. *Id.,* ¶ 27.

### B. Class and Collective Definitions.

An individual who is eligible to share in the proposed Settlement is called a Settlement Class Member, which means he or she belongs to either of the following:

- The **California Class** means all persons who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of California between September 6, 2015 and March 1, 2022. Settlement, ¶ 2.c.

- The **Oregon Class** means all persons who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of Oregon between July 8, 2014 and March 1, 2022. *Id.*, ¶ 2.w.

- The **Washington Class** means all persons who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of Washington between July 8, 2017 and March 1, 2022. *Id.*, ¶ 2.kk.

- The **Illinois Class** means all persons who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of Illinois between July 8, 2017 and March 1, 2022. *Id.*, ¶ 2.s.

- The **Collective** or **Opt-In Plaintiffs** includes all individuals who have submitted Opt-In Consent Forms in this Action and worked for Defendants as non-exempt, hourly employees between March 13, 2017 and March 1, 2022. *Id.*, ¶ 2.g.

- The **Aggrieved Employees** includes all individuals who are employed, have been employed, or alleged in the Action to have been employed by Defendants as a non-exempt employee in the State of California at any time between July 7, 2018 and Preliminary Approval. *Id.* ¶ 2.b.

*Id.*, ¶ 2.hh. Individuals belonging to the California, Oregon, Washington, and/or Illinois Classes are referred to as "State Class Members." *Id.* ¶ 2.hh.

### C.  Allocation and Awards.

Participating Individuals[8] will each receive a settlement award check without the need to submit a claim form.[9] *See* Settlement, ¶¶ 33-34, 36-38. Each Participating Individual's settlement share will be determined based on the total number of weeks that the respective Participating Individual was employed by Defendants during the applicable limitations period(s). *Id.*, ¶ 38. Participating Individuals who also worked for Defendants at any time from July 7, 2018 in California through the date of Preliminary Approval will also receive a *pro rata* portion of the Net PAGA Amount, based on the number of workweeks they were employed by Defendants during the PAGA period. *Id.,* ¶ 38.b.

Each workweek will be equal to one settlement share, but to reflect the increased value of state law claims and differing average rates of pay by state, workweeks during which work was performed in California, Oregon, Washington, and Illinois will be weighted more heavily. *Id.*, ¶ 38.a.iii. Specifically, each workweek during which work was performed in: California will be equal to 5 settlement shares; in Oregon or Washington will be equal to 3 settlement shares; and in Illinois will be equal to 2 settlement shares. *Id*.

The total number of settlement shares (as weighted) for all Participating Individuals will be added together and the Net Settlement Amount will be divided by that total to reach a per share dollar figure. Settlement, ¶ 38.a.iv. The resulting per share dollar figure will then be multiplied by each Participating Individual's number of settlement shares (as weighted) to determine his or her Individual Settlement Payment. *Id*. The Class and Collective Notices will provide the estimated Individual Settlement Payment and number of Workweeks for each Settlement Class Member, assuming full participation in the Settlement.  *Id.*, Exs. C, D. The Collective Notice will also notify potential Collective Members that they have previously "opted-in" to this Action and that their FLSA claims will

---

[8] "Participating Individuals" refer to State Class Members who do not validly request for exclusion for the Settlement, all Opt-In Plaintiffs, all State Class Members who cash or deposit their Settlement Award checks, and all Aggrieved Employees. *Id.* ¶ 2.y.

[9] Class Members are not required to submit an Opt-In Form to receive payment under the Settlement for their work in California, Oregon, Washington, or Illinois during the relevant time periods. However, only Opt-In Plaintiffs will be credited for work in other states, as the damages for work in those states are attributable to FLSA claims only. Class Members may opt out of the Rule 23 component of the Settlement, but those who are Opt-In Plaintiffs may not opt out of the FLSA component of the Settlement. Settlement, ¶¶ 23.g, 23.h.

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

be released pursuant to the Settlement regardless of whether they cash their Settlement Award checks. *Id.,* Ex. D. Settlement Award and eligibility determinations will be based on employee workweek information that Defendants will provide to the Settlement Administrator; however, Settlement Class Members will be able to dispute their workweeks by submitting evidence that they worked more workweeks than shown by Defendants' records. *Id*, ¶¶ 27, 40, Exs. C, D.

Any funds from checks that are returned as undeliverable or are not negotiated within 180 calendar days after issuance will either: (a) if less than $95,000.00, revert to the Parties' agreed-upon *cy pres* beneficiary, Legal Aid at Work, or (b); if $95,000.00 or greater, be redistributed to the Participating Individuals who negotiated their checks on a *pro rata* basis. *Id.*, ¶ 46; Cottrell Decl., ¶ 30.

### D.  Scope of Release.

The releases contemplated by the proposed Settlement are dependent upon whether the Participating Individual is an Opt-In Plaintiff, aggrieved employee, and/or a State Class Member, and are tethered to the factual allegations in the pleadings. Settlement, ¶ 23.

- **<u>Opt-In Plaintiffs</u>** will release any and all claims under the FLSA that were or could have been pled arising out of the factual predicates and/or allegations pled of any complaints in this Action, between March 13, 2017 and March 1, 2022, as well as any state law minimum wage and overtime wage claims to the extent they overlap with the FLSA time period between March 13, 2017 and March 1, 2022. *Id.*, ¶ 23.a.

- **<u>California Class Members</u>** will release any and all claims under California law, that were or could have been pled arising out of the factual predicates and/or allegations pled in the complaints and PAGA letters in this Action, between September 6, 2015 and March 1, 2022. *Id.*, ¶ 23.b.

- **<u>Oregon Class Members</u>** will release any and all claims under Oregon law, that were or could have been pled arising out of the factual predicates and/or allegations pled in the complaints in this Action, between July 8, 2014 and March 1, 2022. *Id.*, ¶ 23.d.

- **<u>Washington Class Members</u>** will release any and all claims under Washington law, that were or could have been pled arising out of the factual predicates and/or allegations pled in the complaints in this Action, between July 8, 2017 and March 1, 2022. *Id.*, ¶ 23.c.

- **<u>Illinois Class Members</u>** will release any and all claims under Illinois law, that were or could have been pled arising out of the factual predicates and/or allegations pled in the complaints in this Action, between July 8, 2017 and March 1, 2022. *Id.*, ¶ 23.e.

- **<u>Released PAGA Claims</u>**: Under the Settlement, Plaintiff Wright further releases the claims and rights to recover civil penalties against the Releasees on behalf of the LWDA and

Aggrieved Employees for any Labor Code or Wage Order violation alleged or could have been alleged in the complaints and PAGA letters filed in this Action, through the date of preliminary approval of the Settlement. *Id.*, ¶ 23.f. Aggrieved Employees may not opt out or otherwise exclude themselves from this release. *Id.*

As to State Class Members who are not Opt-In Plaintiffs, those who cash, deposit, or otherwise negotiate their Settlement Award checks will also release any and all claims under the FLSA arising from or related to their work in California, Washington, Oregon, and/or Illinois between March 13, 2017 and March 1, 2022. *Id.*, ¶ 23.g. If such a State Class Member does not cash, deposit, or negotiate his or her check, he or she will not release any claims under the FLSA, *Id.* ¶ 23.h.

The Class and Collective Representatives – Plaintiffs Wright, Stanley, Quam, and Lewis – and Emily Gracey also agree to a general release. *Id.*, ¶ 25.

### E.  Settlement Administration.

The Parties have agreed to use SSI Settlement Services, Inc. ("SSI") to administer the Settlement, for total fees and costs currently estimated at $149,400. *Id.*, ¶¶ 2.ee, 2.ff. SSI will distribute the Notice of Settlement via mail and email, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, and prepare and issue all disbursements to Class Members, the LWDA, the Class Representatives and Emily Gracey, Plaintiffs' counsel, and applicable state, and federal tax authorities. *Id.*, ¶¶ 26.c-j, 33, 38. SSI is also responsible for the timely preparation and filing of all tax returns and reporting, and will make timely and accurate payment of any and all necessary taxes and withholdings. *Ibid.* SSI will establish a settlement website that will allow Class Members to view the Class and Collective Notices (in generic form), the Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement. *Id.*, ¶ 26.c. SSI will also establish a toll-free call center for telephone inquiries from Class Members. *Id.*

## IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE STATE LAW CLASSES AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE

### A.  The Court Should Grant Preliminary Approval of the Settlement as to the Classes.

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed

settlement upon written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23 (a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Accordingly, the Court should preliminarily approve the Settlement as to the Classes.

### B. The State Classes Meet the Requirements for Class Certification.

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees who have suffered wage and hour violations under the wage and hour laws of these states.[10]

---

[10] *See, e.g., Caudle v. Sprint/United Mgmt. Co.*, No. C 17-06874 WHA, 2018 WL 6618280, at *7 (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations);; *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *14 (W.D. Wash. Aug. 16, 2006) (certifying Washington Rule 23 class in a case involving off-the-clock, overtime, and meal break violations under Washington law); *Chastain v. Cam*, No. 3:13-cv-01802-SI,

---

11

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

Likewise, the State Classes meet all of these requirements.

### 1. The State Classes Are Numerous and Ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). There are approximately 20,266 members of the combined State Classes, each State Class exceeding well over 1,000 members each, thereby rendering the classes so large as to make joinder impracticable. Cottrell Decl., ¶ 31. The State Class Members may also be readily identified from Defendants' payroll records. *Id*.

### 2. Plaintiffs' Claims Raise Common Issues of Fact or Law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id*.

Common questions of law and fact predominate here, satisfying Rule 23(a)(2) and (b)(3), as alleged in the Complaint. Defendants have uniform policies applicable to all State Class Members. Specifically, Plaintiffs allege that State Class Members all perform the same job duty to provide care and support to Defendants' residents pursuant to Defendants' standards and requirements. Cottrell Decl., ¶ 32. Plaintiffs allege that the wage and hour violations are in large measure borne of Defendants' standardized policies, practices, and procedures, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. *Id.* In particular, Plaintiffs allege that State Class Members are subject to the same: hiring and training process; timekeeping and rounding, payroll, and compensation policies and systems; meal and rest period policies and practices; and reimbursement

---

2016 U.S. Dist. LEXIS 52092, at *29 (D. Or. Apr. 19, 2016) (certifying Oregon Rule 23 class and denying FLSA decertification in a case asserting off-the-clock and unpaid meal breaks); *Smith v. Family Video Movie Club, Inc*., 311 F.R.D. 469, 483 (N.D. Ill. 2015) (certifying Illinois Rule 23 class in a case asserting overtime pay rates failed to include commission payments and off-the-clock for delivering bank deposits).

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

1  policies. Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id.* Because these

2  questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is

3  satisfied for the Classes.

### 3.  Plaintiffs' Claims are Typical of the Claims of the Respective State Classes.

5  "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

6  members of the class." *Fry*, *supra*, 198 F.R.D. at 468. "Under the rule's permissive standards, a

7  representative's claims are 'typical' if they are reasonably coextensive with those of absent class

8  members; they need not be substantially identical." *Hanlon*, *supra*, 150 F.3d at 1020. Here, Plaintiffs'

9  claims are typical of those of all other State Class Members. They were subject to the alleged illegal

10  policies and practices that form the basis of the claims asserted in this case. Interviews with State Class

11  Members and review of timekeeping and payroll data confirm to Plaintiffs that the employees

12  throughout the United States were subjected to the same alleged illegal policies and practices to which

13  Plaintiff was subjected. Cottrell Decl., ¶ 33. Thus, the typicality requirement is also satisfied.

### 4.  Plaintiffs and Class Counsel Will Adequately Represent the State Classes.

15  To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1)

16  that the putative named plaintiff has the ability and the incentive to represent the claims of the class

17  vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between

18  the individual's claims and those asserted on behalf of the class." *Fry, supra*, 198 F.R.D. at 469.

19  Plaintiffs' claims are in line with the claims of the Class, and Plaintiffs' claims are not antagonistic to

20  the claims of State Class Members.  Plaintiffs have prosecuted this case with the interests of the State

21  Class Members in mind. Moreover, Class Counsel has extensive experience in class action and

22  employment litigation, including wage and hour class actions, and do not have any conflict with the

23  classes. Cottrell Decl., ¶¶ 5-7, 34.

### 5.  The Rule 23(b)(3) Requirements for Class Certification are also Met.

25  Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any

26  questions affecting only individual members" and that a class action is "superior to other available

27  methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under

28  Rule 23(b)(3) … 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation.'" *Wang, supra,* 737 F.3d at 545.

Here, the common questions raised in this action predominate over any individualized questions concerning the State Classes.  The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than the treatment the State Class Members experienced on an individual level. Cottrell Decl., ¶ 35. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' uniform policies, and would not require inquiries specific to individual class members. *Id.*

Further, the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. *Id.,* ¶ 36. To determine whether the class approach is superior, courts are to consider: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the State Class Members do not have a strong interest in controlling their individual claims. The action involves thousands of workers with very similar, but relatively small, claims for monetary injury. Cottrell Decl., ¶ 36. If the State Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. *Id.* Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations. *Id.,* ¶ 37.

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability is not a concern in the settlement context.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the California Class for settlement purposes.

**C.  Plaintiffs and the Collective Members are Similarly Situated.**

While in the FLSA context, court approval is required for settlements, the Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Most courts in this Circuit, however, first consider whether the named plaintiffs are "similarly situated" to the putative collective members within the meaning of 29 U.S.C. § 216(b), and then evaluate the settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues...that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *Otey*, 2015 WL 6091741, at *4.

This Court has already granted conditional certification of the FLSA collective, and Plaintiffs are confident that they have satisfied their burden of making substantial allegations and a modest factual showing Collective Members were subject to a common practice or policy that violated the FLSA. ECF 15. Because Defendants maintain various common policies and practices as to what work they compensate and what work they do not compensate, and apply these policies and practices to the Collective Members, there are no individual defenses available to Defendants. Cottrell Decl., ¶ 38.

During the course of the litigation, 953 Collective Members filed opt-in forms to join the Collective, and approximately 396 of those Collective Members did not work in the states of California, Oregon, Washington, and Illinois. *See* ECF 67; Cottrell Decl., ¶ 39.  Defendants have not moved for decertification of the FLSA claim and have stipulated as part of the Settlement that the Collective Members are similarly situated to Plaintiff for purposes of settlement. *Id.*, ¶ 40; Settlement, ¶ 15. The Court should find that Plaintiffs and the Collective Members are similarly situated for purposes of preliminary settlement approval.

**D. The Settlement Should Be Preliminarily Approved as to the State Classes and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate.**

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Otey*, 2015 WL 6091741, at *4. Before making such a finding, the Court must consider whether (1) class representative and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate in light of the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement made in connection with the proposal; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoted source omitted) (enumerating additional non-exhaustive factors that are to be considered for purposes of granting final approval of a class settlement). "While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining whether preliminary approval is warranted, doing so often proves useful given the role these factors play in final approval determinations." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812, at *6 (E.D. Cal. Jan. 22, 2022).

Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*,

516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1. The Terms of the Settlement are Fair, Reasonable, and Adequate, and Were Reached Only After Months of Negotiations at Arm's Length.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice, supra,* 688 F.2d at 623.[11] Here, the negotiated non-reversionary Gross Settlement Amount of $9,500,000 represents approximately 43% of the $22.2 million total that Plaintiffs calculated for unliquidated, core claims for unpaid wages, meal and rest breaks, and expense reimbursements. Cottrell Decl., ¶ 45. When adding derivative claims and potential penalties, the $9,500,000 million settlement amount represents approximately 14% of Defendants' total potential exposure of $69.1 million. *Id.,* ¶ 46.[12]  These calculations are exclusive of

---

[11] *See, e.g., Andrews v. Prestige Care, Inc.,* Case No. 2:18-cv-00378-JAM-KJN (Dkt. No. 24, Mar. 24, 2020; Dkt. No. 32, July 14, 2020) (Mendez, J.) (preliminarily and finally approving settlement representing 17.54% to 69.74% of the realistic and maximum total damage calculations); *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

[12] The Net PAGA Amount of $95,000 represents 1% of the gross settlement amount, well within the PAGA settlements previously approved in this district and other California district courts. *See* Cottrell Decl., ¶ 47; *see, e.g., Ahmed v. Beverly Health & Rehab. Servs., Inc.*, 2018 U.S. Dist. LEXIS 20460, 2018 WL 746393, at *10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement); *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *35-36 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of the total settlement); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement); *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27% of the total settlement). Indeed, the LWDA has stated it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (quoting from the LWDA response in *O'Connor v. Uber Technologies Inc.*, 201 F.Supp.3d 1110 (N.D. Cal. 2016)). The reasoning for this approach is multifaceted; however, one of the major concerns regarding PAGA settlements is that PAGA penalties may be reduced at a court's discretion. *See Gonzales v. CoreCivic of Tennessee, LLC,* 2018 WL 4388425, at *6-9 (E.D. Cal. Sept. 13, 2018) ("A trial court's discretion to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps even significantly, in reaching a settlement. However, before the court could exercise that discretion it would have to know the actual estimated values of the PAGA claims.").

---

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

attorneys' fees and costs.

Plaintiffs' counsel based their exposure analysis and settlement negotiations on formal and informal discovery (including payroll and timekeeping data), and nearly 300 interviews with Caregivers. *Id*., ¶ 42. Plaintiffs' counsel obtained average rates of pay for Caregivers, which were then used in conjunction with amounts of unpaid time to determine estimated damages for off-the-clock and overtime violations. *Id*. Based on interview analysis and cross-checked with Defendants' data, Plaintiffs applied a high-end damage assumption of 30 minutes of off-the-clock time per day, along with each Caregivers missing 79.3% of their meal periods (accounting for paid meal premium payments) and 86% of their rest periods, and an average of $50 out-of-pocket expenses per Caregiver. *Id*., ¶¶ 43-44.

Using these assumptions and further assuming that Plaintiff and the Caregivers would certify all of their claims and prevail at trial, Plaintiffs' counsel calculated the total potential substantive exposure if Plaintiffs fully prevailed on all of their claims at approximately $22.2 million and the total exposure (including liquidated damages, derivative claims, and stacked civil penalties) of $69.1 million. *Id*., ¶ 44.

These figures are based on Plaintiffs' assessment of a best-case-scenario. To obtain such a result at trial, Plaintiffs would have to, at the minimum: (1) win on appeal before the Ninth Circuit and the California Court of Appeal; (2) certify all claims and withstand any decertification motions; (3) prevail on the merits on all claims; (4) prove that Defendants acted knowingly or in bad faith; and (5) prove that all Caregivers experienced the violations at the levels described above for every shift. *Id*., ¶ 48.

The Gross Settlement Amount is a negotiated amount that resulted only after months of substantial arm's-length negotiations, multiple mediation sessions, and significant investigation and analysis by Plaintiffs' counsel. Cottrell Decl., ¶¶ 19-24, 42, 54. Plaintiffs and their counsel considered the significant risks of continued litigation when considering the proposed Settlement. *Id*., ¶¶ 49, 51. These risks were front and center, particularly given the nature of the off-the-clock work, that the Caregivers work in numerous and varying locations often owned by various third-party entities, which could invariably complicate certification efforts and proving the claims on the merits. *Id*. In contrast, the Settlement will result in immediate and certain payment to Caregivers of meaningful amounts. *Id*.,

¶ 50.

The average recovery is approximately $1,474 per California Class Member, $884 per Oregon and Washington Class Member, $589 per Illinois Class Member, and $151 per FLSA-only Collective Member.[13] *Id*. This amount provides significant compensation to the Participating Individuals, and the Settlement provides an excellent recovery well within the reasonable standard when considering the difficulty and risks presented by expanding and uncertain litigation. *Id*. The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the procedural posture of the Actions and the specific defenses asserted by Defendants, many of which are unique to this case. *See Officers for Justice*, *supra*, 688 F.2d at 623. In light of all of the risks, the settlement amount is fair, reasonable, and adequate.

2.   **The Parties Agreed to a Fair and Equitable Distribution of the Settlement Proceeds Tailored to the Respective Claims of the Classes and Collective.**

In an effort to ensure fairness, the Parties agreed to allocate the settlement proceeds amongst Class and Collective Members in a manner that recognizes that amount of time that the particular individual was employed by Defendants in the applicable limitations period. The allocation method, which is based on the number of workweeks, will ensure that longer-tenured workers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims by weighting the Workweek shares more heavily for work performed in California, Oregon, Washington, and Illinois. Cottrell Decl., ¶ 52.[14] The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. *Id*. To the extent that any Class Member is *both* an Opt-In Plaintiff and a member of a State Class, these workers will

---

[13] The averages provided here assume all Class and Collective Members participate in the Settlement and that each member worked identical lengths of employment, and incorporate workweek weightings that reflect the increased value of state law claims and differing average rates of pay by state, described below. Cottrell Decl., ¶ 50, n.2.

[14] District courts in this circuit have granted final approval of hybrid FLSA/Rule 23 wage and hour settlement that incorporated greater workweek weighting for state law claims and lower workweek weighting for FLSA-only Workweeks. *See Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-06741-LB, 2020 U.S. Dist. LEXIS 218152, at *6 (N.D. Cal. Nov. 20, 2020); *Jones, et al. v. CertifiedSafety, et al.*, 3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020); *Soto, et al. v. O.C. Commc'ns, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019); *see also Loeza v. JP Morgan Chase Bank*, No. 13-cv-0095-L (BGS), 2015 U.S. Dist. LEXIS 196647, at *15 (S.D. Cal. Aug. 18, 2015) (granting preliminary approval where workweeks are weighted for different subclasses based on the chance of recovery of each class's claims).

---

1  only receive a recovery based on their workweeks as a State Class Member for their work in their

2  respective state. *Id.*, ¶ 53. Such workers will not receive a "double recovery." *Id.*

3      A class action settlement need not benefit all class members equally. *Holmes v. Continental Can*

4  *Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *cf. Reyes v. CVS Pharmacy, Inc.,* No. 1:14-cv-00964-MJS,

5  2016 U.S. Dist. LEXIS 17180, at \*19-20 (E.D. Cal. Feb. 10, 2016) (noting equal distribution of

6  settlement to class members may be appropriate where plaintiffs face difficulties prosecuting their

7  individual claims). Rather, although disparities in the treatment of class and collective members may

8  raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by

9  showing that the unequal allocations are based on legitimate considerations. *Holmes, supra,* 706 F.2d

10  at 1148. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties

11  submit that it should be approved by the Court.

12      **3.   The Extensive Discovery in this Action Enabled the Parties to Make Informed**

13      **Decisions Regarding Settlement.**

14      The amount of discovery completed prior to reaching a settlement is important because it bears

15  on whether the Parties and the Court have sufficient information before them to assess the merits of the

16  claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at \*6

17  (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of

18  the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

19  454 (E.D. Cal. 2013).

20      The Parties engaged in extensive formal and informal discovery, including thousands of pages

21  of documents, and hundreds of class interviews that enabled Plaintiffs to assess the claims and potential

22  defenses in this action. Cottrell Decl., ¶ 54. Plaintiffs were able to assess the legal and factual issues

23  that would arise if the cases proceeded to trial(s). *Id*. In addition, in reaching this Settlement, Plaintiffs'

24  counsel relied on their substantial litigation experience in similar wage and hour class and collective

25  actions. *Id*. Plaintiffs' counsel's liability and damages evaluation was premised on a careful and

26  extensive analysis of the effects of Defendants' compensation policies and practices on Class Members'

27  pay. *Id*. Ultimately, facilitated by mediators David Rotman and Steve Serratore, the Parties used this

28  information and discovery to fairly resolve the litigation. *See Id*.

### 4. Litigating the Action Not Only Would Delay Recovery, but Would be Expensive, Time Consuming, and Involve Substantial Risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. *Id.*, ¶ 55. If this Action were to go to trial(s) and through appeals as class, representative, and collective actions (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Plaintiffs' Counsel estimates that fees and costs would well exceed $7,000,000.00. *Id.*

Litigating the class, representative, and collective action claims would require substantial additional preparation and discovery. *Id.,* ¶ 56. Plaintiffs Wright, Stanley, Quam, and Lewis would need to successfully win on appeal in the Ninth Circuit. *Id.* Following that, Plaintiffs would need to complete fact and expert discovery. This would include: (1) written discovery to Collective Members; (2) depositions of the Collective Members and Defendants' 30(b)(6) witnesses, managers, and executives; (3) third party discovery to the various facilities where Caregivers worked, and (4) expert discovery. Finally, Plaintiff would need to prepare for trial, which would require the presentation of percipient and expert witnesses, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Even if Plaintiffs successfully overcame these procedural obstacles, recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendants have asserted to defend this action. *Id.,* ¶ 57. Off-the-clock claims are difficult to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker.[15] While Plaintiffs are confident that they would establish that common policies and practices

---

[15] *See, e.g., In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011); *Forrester v. Roth's I. G. A. Foodliner, Inc.,* 475 F.Supp. 630, 634 (D Or 1979) (employees maybe estopped from "off-the-clock" claims when they have deliberately underreported their hours and/or routinely signed payroll records, certifying them to be true and accurate); *Hawkins v. Securitas Sec. Servs. USA, Inc.*,

give rise to the off-the-clock work for Caregivers, Plaintiffs acknowledged that the work was performed by hourly employees holding various job titles at dozens of different locations around the country, which were often owner and/or operated by numerous different companies. *Id*. With differing facilities' policies and practices, physical layouts, and the nature of the work varying by location, Plaintiffs recognized that obtaining class certification would present a significant obstacle, with the risk that the Caregivers could only pursue individual actions in the event that certification was denied. *Id.* Certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony, and Plaintiffs would likely face motions for decertification as the case progressed. *Id.*

Plaintiffs also recognized similar obstacles may hinder class certification and proving their claims on the merits of Plaintiffs' class claims regarding Caregivers' meal and rest breaks. *Id.,* ¶ 58. At the core of Plaintiffs' meal and rest break claims is Defendants' common policy and practice of requiring Caregivers to carry communication devices and respond to work related calls during their breaks, rendering such breaks on-duty. *Id*. Although California, Oregon, and Washington, share similar meal and rest break policies against "on-duty" breaks, courts in Oregon and Washington lack the abundance of case law existing in California regarding whether being required to carry and respond to communication devices would suffice to show breaks were on duty in Oregon in Washington. *Id*. Defendants were poised to submit evidence and deposition testimony as to their defense, that communication devices were only provided to certain Caregivers, and among such Caregivers, only Caregivers who were assigned to be on-call. *Id*. In the event Defendants' evidence proved to be true, Plaintiffs' meal and rest break claims could have potentially failed at the class certification stage. Further, given that the substantive damages are largely driven by the alleged off-the-clock work and meal and rest breaks, and that the derivative and penalty claims are tethered to off-the-clock claims, Plaintiffs recognized that their potential failure to obtain class certification on the off-the-clock work and meal rest breaks could potentially result in the death knell of their derivative claims. *Id.*

Plaintiffs would also encounter difficulties in proving Defendants' liability on the merits for

---

280 F.R.D. 388, 392 (N.D. Ill. 2011) (certifying Illinois Rule 23 subclass asserting off-the-clock work performed during training and orientation but denying certification of subclass asserting off-the-clock work performed pre- and post- shift).

1   various other reasons. *Id.*, ¶ 59. For example, Section 260 of the FLSA reads in relevant part that, in

2   any civil action regarding unpaid compensation, "if the employer shows to the satisfaction of the court

3   that the act or omission giving rise to such action was in good faith and that he had reasonable grounds

4   for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound

5   discretion, award no liquidated damages or award any amount thereof." 29 U.S.C. 260. Defendants

6   would no doubt be prepared to submit evidence showing that it had acted in good faith and on

7   reasonable grounds that its actions were not in violation of the FLSA, and whether this Court agrees

8   with Defendants would be a risk that Plaintiffs would necessarily undertake had litigation continued.

9   The path to an award of additional damages and penalties at trial for overlapping FLSA and state

10  law claims was equally uncertain. Plaintiffs' recovery analysis above assumes Oregon, Washington,

11  and Illinois class members could receive both liquidated damages under the FLSA, but also civil

12  penalties or liquidated damages under applicable case law (e.g., double penalties under Oregon law,

13  treble damages under Washington law, 2% punitive damages under Illinois law) for the same

14  underlying overtime and minimum wage claims. Cottrell Decl., ¶ 60. Although Plaintiffs are confident

15  they would be able to succeed in arguing for these penalties and liquidated damages, Defendants would

16  surely vehemently oppose such an approach. *Id.*

17  As to Plaintiff Wright's PAGA claims, Plaintiff Wright would first need to overcome similar

18  procedural hurdles, including successfully defending against Defendants' petition for writ of mandate

19  and completing substantial amounts of written discovery and depositions. *See Id.,* ¶¶ 56, 61. Plaintiffs'

20  exposure analysis assumes stacking; however, there is a significant chance that the Court would decline

21  to stack on derivative violations for an employer that maintains comprehensive, facially compliant

22  policies and training.[16] *Id.*, ¶ 62.

23  Plaintiffs would further likely need to move for and defend against motions for summary

---

24  [6] *Smith v. Lux Retail N. Am., Inc.*, No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D.

25  Cal. June 13, 2013) ("For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted five (count them, five) separate labor code violations that could lead to statutory

26  penalties. One is a penalty for failure to pay overtime at the appropriate rate []. Another is for denying employees minimum wage and overtime []. But is it plausible that we would really pile one penalty on

27  another for a single substantive wrong?"). Even without stacking derivative violations, a given employee may present multiple PAGA violations (*e.g.*, for meal and rest violations, off-the-clock work, and failure to reimburse) for a particular pay period. There is a chance that the Court would decline to

28  assess multiple violations per pay period per employee.

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

1   judgment or adjudication, and would have been further required to take their claims to trial. *Id.,* ¶ 63.

2   Trials are inherently risky for all parties. Although Plaintiffs believes that they could have been

3   successful in proving these claims, and that Defendants' evidence would not have been as persuasive,

4   a trial on the off-the-clock claims and meal and rest periods would have carried a high degree of risk.[17]

5       In contrast to litigating this suit, resolving this case by means of the Settlement will yield a

6   prompt, certain, and very substantial recovery for the Class Members. Such a result will benefit the

7   Parties and the court system. It will bring finality to over two years of arduous litigation and will

8   foreclose the possibility of expanding litigation.

9       **5.   The Settlement is the Product of Informed, Non-collusive, and Arm's Length**

10       **Negotiations Between Experienced Counsel.**

11       Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining.

12   *See Hanlon*, *supra*, 150 F.3d at 1027; *Wren*, *supra*, 2011 WL 1230826, at *14. Furthermore, where

13   counsel are well-qualified to represent the proposed class and collective in a settlement based on their

14   extensive class and collective action experience and familiarity with the strengths and weaknesses of

15   the action, courts find this factor to support a finding of fairness. *Wren*, at *10; *Carter v. Anderson*

16   *Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11,

17   2010) ("Counsel's opinion is accorded considerable weight.").

18       Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl., ¶

19   65. The Parties participated in three separate mediation sessions before David Rotman and Steve

20   Serratore, both of whom are skilled mediators with many years of experience mediating employment

21   matters. *Id.* The Parties then spent several months negotiating the long form settlement agreement over

22   numerous drafts, with several rounds of meet and confer and correspondence related to the terms and

23

---

24   [17] For example, on the California derivative claims, Defendants would argue that no penalties for
waiting-time violations can be awarded unless the failure to pay wages is "willful," an element that
25   Plaintiffs acknowledge given Defendants' policies and enforcement would have been difficult to prove.
*See* Cal. Lab. Code § 203; 8 C.C.R. 13520 ("[a] willful failure to pay wages within the meaning of
26   Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when
those wages were due."); *Smith v. Rae Venter Law Group*, 29 Cal.4th 345, 354 n.2 (2002) (holding that
27   a good faith dispute that any wages are due will preclude an award of waiting time penalties).
Defendants would also have argued that an employer's failure to pay wages is not willful unless it
28   reached the standard of "gross negligence or recklessness*." See Amaral v. Cintas*, 163 Cal.App.4th
1157, 1201 (2008).

details of the Settlement. *Id*. Plaintiffs are represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id*., ¶ 5-7, 66.

### 6.  The Class Representative Enhancement Payments are Reasonable and the Class Representatives Have Adequately Represented the Classes.

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[18] The enhancement payments of up to $10,000 for Plaintiff Wright and $5,000 each for Plaintiffs Stanley, Quam, and Lewis, as well as to Emily Gracey, are intended to compensate them for broader releases and for the critical roles they played in this case, and the time, effort, and risks – including risks to future employment – they undertook in helping secure the result obtained on behalf of the Caregivers. Cottrell Decl., ¶ 67. Plaintiffs' proposed enhancement payments total $30,000, representing only 0.32% of the gross settlement amount, *Id.,* ¶ 68, well within payments approved in similar cases.[19] In agreeing to serve as Class and Collective representatives, Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class Members. *Id.,* ¶ 69. Ms. Gracey, in dismissing the *Gracey* action against the Defendants, also helped secure the Settlement. *Id.,* ¶ 70. Moreover, Plaintiffs and Ms. Gracey agreed to a general release, unlike other Class Members. *Id.,* ¶ 71. Defendants do not oppose the requested payments to the Plaintiffs and to Ms. Gracey as reasonable service awards. *Id.,* ¶ 72; Settlement, ¶¶ 34.a. The service awards are fair

---

[18] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

[19] *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS 168923, at *15 (E.D. Cal. Sep. 15, 2020) (approving $10,000 service award representing .003 percent of gross settlement amount in wage and hour settlement where class members were estimated to receive $155 on average); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331, at *32 (E.D. Cal. Aug. 21, 2019) (approving $10,000 service awards each to two class representatives, which amounted to 0.6 percent of the overall settlement amount of $3,400,000); *Soto*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000 and $10,000 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.*, No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service award for each class representative in FLSA and California state law representative wage and hour action); *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1265 (C.D. Cal. 2016) (awarding service award of $10,000, approximately 100 times average the award and less than 0.25 percent of gross settlement). *See also, e.g.*, *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

and reasonable, and should be approved.

### 7. The Requested Attorneys' Fees and Costs are Reasonable and Plaintiffs' Counsel Have Adequately Represented the Classes.

In their fee motion to be submitted with the final approval papers, Plaintiffs' Counsel will request up to a maximum of $3,166,663.50 in fees, representing one-third of the Gross Settlement Amount, plus reimbursement of costs up $110,000. Cottrell Decl., ¶ 73. The requested fees will represent less than the 35% maximum provided for by the Settlement. Settlement, ¶ 2.m. Plaintiffs' counsel will provide their lodestar information with their fee motion, which will demonstrate the reasonableness of Plaintiffs' Counsel's rates. *See* Cottrell Decl., ¶¶ 74, 77; *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award").

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.[20] However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 at 491 (E.D. Cal. 2010) (citation omitted); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts customarily approve payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions.[21]

Here, given the excellent results achieved, the effort expended litigating the Action, including the difficulties attendant to litigating this case, such an upward adjustment is warranted. There was no

---

[20] *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, *supra*, 150 F.3d at 1029; *Staton*, *supra*, 327 F.3d at 952; *see also, Chu v. Wells Fargo Investments, LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *4 (N. D. Cal. Feb.16, 2011) percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant).

[21] *See, e.g., Jones, et al.,* Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Soto*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

guarantee of compensation or reimbursement. Cottrell Decl., ¶ 75. Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendants' vigorous and skillful defense further confronted Plaintiffs' counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Plaintiffs and their counsel committed themselves to developing and pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class and collective recovery. *Id.* During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Plaintiffs' Counsel had to confront and the risks they had to fully absorb on behalf of the Caregivers here are precisely the reasons for multipliers in contingency fee cases.[22]

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain. *Id.,* ¶ 76. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

For these reasons, Plaintiffs' counsel respectfully submits that a one-third recovery for fees is reasonable and appropriate. *Id.,* ¶ 79. Class Counsel also requests reimbursement for their litigation costs. *Id.,* ¶ 78. Class Counsel's efforts resulted in an excellent settlement, and the fee and costs award should be preliminarily approved as fair and reasonable.

---

[22] *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer is much higher than that of conventional loans").

### E.  The Proposed Notices of Settlement and Claims Process Are Reasonable.

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, *supra*, 361 F.3d at 575.

The Notices of Settlement, attached as **Exhibit C** and **D** to the Settlement Agreement (together, "Notices"), and manner of distribution negotiated and agreed upon by the Parties are "the best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). All Class Members have been identified and the Notices will be mailed directly to each Class Member and emailed to those for whom Defendants have an email address. Settlement, ¶ 26.f. The proposed Notices are clear and straightforward, and provide information on the nature of the action and the proposed Class and Collective, the terms and provisions of the Settlement, and the monetary awards that the Settlement will provide Class Members. *See* Exs. C-D. In addition, the Parties will provide a settlement website that provides a generic form of the Notices, the Settlement Agreement, and other case related documents and contact information. *Id*.

The proposed class Notice fulfills the requirement of neutrality in class notices. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarize the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the Named Plaintiffs, Class Counsel, the Settlement Administrator (SSI), and the Class or Collective Members, as applicable, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004); *see* Exs. C-D.

The proposed class Notice clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the Settlement, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. Exs. C and D. Pursuant to Rule 23(h), the proposed Notices also set forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notices clearly state that the Settlement does not constitute an admission of liability by Defendants. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id.* Accordingly, the Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Notices. Before mailing, Defendants will provide to the SSI a database that contains the names, last known addresses, last known email addresses (if any), and social security numbers of each Class Member, along with the applicable number(s) of workweeks for calculating the respective settlement shares. Settlement, ¶¶ 2.f, 26.d. The Notices will be sent by United States Mail, and also via email to the maximum extent possible. *Id.,* ¶ 26.f. SSI will make reasonable efforts to update the contact information in the database using public and private skip tracing methods. *Id.,* ¶ 26.e. Within 10 days of receipt of the Class List from Defendants, SSI will mail the Notices to each Class Member. *Id.,* 26.f.

With respect to Notices returned as undeliverable, SSI will re-mail any Notices returned to SSI with a forwarding address following receipt of the returned mail. *Id.,* ¶ 26.g. If any Notice is returned to SSI without a forwarding address, SSI will undertake reasonable efforts to search for the correct address, including skip tracing, and will promptly re-mail the Notice to any newly found address. *Id.*

State Class Members will have 60 days from the mailing of the Notices to opt-out or object to the Settlement. *Id.*, ¶ 2.v, 28, 29. Any State Class Member who does not submit a timely request to exclude themselves from the Settlement will be deemed a Participating Individual whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case. *Id.*, ¶ 29. Administration of the Settlement will follow upon the

1  Court's issuance of final approval of the Settlement. *Id.*, ¶ 33-34. SSI will provide Class Counsel and

2  Defendants' Counsel with a report of all Settlement payments within 10 business days after the Notice

3  Deadline (the opt-out and objection deadline). Settlement, ¶ 26.h; *see also Id.*, ¶ 26.j.

4       Because the proposed Notices clearly and concisely describe the terms of the Settlement and the

5  awards and obligations for Class Members who participate, and because the Notices will be

6  disseminated in a way calculated to provide notice to as many Class Members as possible, the Notices

7  should be preliminarily approved.

8  **V.    CONCLUSION**

9       For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary

10  approval of the Settlement Agreement as to the State Classes and approval of the Settlement Agreement

11  as to the Collective, in accordance with the schedule set forth herein, and to set a final approval and

12  fairness hearing.

13  Date: July 21, 2022                 Respectfully Submitted,

14

15                                        */s/ Carolyn H. Cottrell*

16                                        Carolyn H. Cottrell
Ori Edelstein

17                                        Michelle S. Lim
**SCHNEIDER WALLACE**

18                                        **COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400

19                                        Emeryville, California 94608
Telephone: (415) 421-7100

20                                        Facsimile: (415) 421-7105

21                                        *Attorneys for Plaintiffs, and the Putative Classes
and Collective*

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD

1

## CERTIFICATE OF SERVICE

2  I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court

3 for the United States District Court, Eastern District of California, by using the Court's CM/ECF system

4 on July 21, 2022.

5  I certify that all participants in the case are registered CM/ECF users and that service will be

6 accomplished by the Court's CM/ECF system.

7

8            /s/ *Carolyn H. Cottrell*
               Carolyn H. Cottrell
9               **SCHNEIDER WALLACE**
               **COTTRELL KONECKY LLP**
10              2000 Powell Street, Suite 1400
              Emeryville, California 94608
11              Telephone: (415) 421-7100
              Facsimile: (415) 421-7105
12              ccottrell@schneiderwallace.com

13              *Attorneys for Plaintiffs and the Putative Classes*
              *and Collective*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Wright, et al. v. Frontier Management LLC, et al.*, Case No. 2:19-cv-01767-JAM-CKD